Bryce Suzuki of Brian K. Blayton-Paysner, LLP, appearing on behalf of the appellants, the Omaha Seldins. I'd like to reserve three minutes for rebuttal. May it please the Court, today we are here on an appeal that involves an order of the Bankruptcy Court that approved the bankruptcy trustee's sale of his unique avoidance powers and related causes of action to effectively a defendant liable on those claims. Although the trustee had two pending acts. As I understand it, for the highest bid for those claims. Correct, although there were some. Your client didn't bid. My client did not bid. My client made a different proposal. Your client made a motion. Do you claim that as a bid? Well, it was a different proposal. No, we're not claiming it was a bid, meaning that my client did not put in an earnest money deposit and make a monetary bid on the claims at the hearing. I mean, the motion said, as I understood it, and that's the thing that most worried me, whether that was a bid. Motion said, well, there's no evidence. Well, we're going to get 1.6 million, we think, but we don't know how. Where no evidence that there's any return to the estate, no estimate of how many attorney's fees it would take, and your client could walk away from this any time they wanted to. Is that right? Isn't that the motion? That is, I would not characterize the motion that way. Well, I don't, what is wrong about that? Well, because what we said, Your Honor, is that the value of the motion was the preservation of $1.6 million. Well, I understand that, but it was no idea of how that was calculated in it. I read the motion to try to find out what it was, and I couldn't find it. Well, there were complaints on file that asserted claims for $1.2 million. Okay, what about the evidence, what is there in there that says the estate will get anything? Well, the estate would get 100% of what was recovered. That isn't in the motion. Well, I think it's discussed in the Lahajani case, so any recoveries that we would have brought into the estate at our own expense would pour 100% into the estate. The reason I ask about that is that there is some idea in this record that you really didn't want these claims to proceed against the particular claim, but you wanted them to use in an overall settlement of some dispute that I don't know much about. Yeah, and that we think is a gross mischaracterization. I know you think it's a gross mischaracterization, but that's why I looked to find out what would be the return to the estate, and I wasn't sure they were going to get any. Yeah, the return to the estate would be whatever dollar amount came in as a result of the lawsuits that at that point were pending, and so the proposal, and to keep it in context, Your Honor, the judge had stayed, the bankruptcy court had pending the outcome of some claims objection litigation. So the idea was, why are we selling these at all right now? We have these claims objections that are pending. The Court put the brakes on those adversary proceedings. The Court previously denied a motion to settle those claims. What's the status of those? Partial summary judgment was granted in favor of my client. You're talking about the claims objections? Yes, Your Honor. Partial summary judgment was granted in favor of my client, and we just completed a 10-day trial on those. The bankruptcy court has the trial issues under advisement. The issues for trial now were limited to about $800,000 of claim, meaning the partial summary judgment reduced the asserted, I think it started out as a $6.2 million claim, to about $800,000 maximum in the aggregate. And so 5.4 was excluded? 5.4 was excluded. Some of that came as amendments. So they amended their claim downward a few times. We were granted partial summary judgment, and in particular, on the statute of limitations issues. Now, Section 503, the particular subsection you've you invoked in the motion, uses the word creditor. What's the authority that says that that's available to an equity stakeholder? Well, let me answer that in two ways, and I will directly answer the question. In one sense, it doesn't matter because we are creditors. If you look at the definition of the term creditor in Section 101 of the bankruptcy code, creditor means someone who held a claim against the debtor as of the date the order for relief was entered. In the case of voluntary petition, that is the petition date of the bankruptcy. We have an allowed claim. The allowed claim was allowed after the date of this order. True. So you're not relying on that to say you were a creditor at the time the motion was filed? Well, the definition of creditor says that as long as you have a claim against the debtor as of the petition date, you are a creditor. Now, granted, that happened afterward. The other part that I would rely on for the proposition that an equity holder can qualify under that statute is actually the, I think, fairly well-accepted doctrine that derivative standing can be granted to any party in interest in the case. Do you have any case that has recognized the right of an equity holder to bring a motion under 503, as you did? I can't think of one. We can certainly, we're happy to provide that in a letter subsequent. I can't think of one off the top of my head. The way that we got there, and I think the bankruptcy court very clearly accepted this proposition, is the abundant case law that says if something says creditor, but you're in a solvent estate, a surplus estate, equity holders are stakeholders and beneficiaries of that estate just in the same way that unsecured creditors are stakeholders in the presence of a secured claim. If a secured claim is going to be satisfied, there's something that's going to come down in the priority scheme to unsecured creditors. The same rationale holds for equity holders. So, although the code does use the term creditor in 503B. And in other places, it uses different terms that clearly would reach equity holders. It does. I think there is more elasticity in those provisions of the code for the structural reasons I just talked about, and we're happy to look at that authority. There's certainly, in the case of Fitzgerald that we cited from the bankruptcy appellate panel, I think would be one area where it said, look, this is a Lahajani-like situation, and it's not enough for a trustee merely to cover the administrative expense claims of the estate and the claims of non-insider unsecured creditors, and throw up the hands and say that's good enough. In a solvent or surplus estate, the interests of equity holders must also be taken into consideration. And in that case, the court clearly said the court needs to consider those interests, and it's not enough just to cover the expenses of creditors. So, I think there is elasticity in that usage. Whereas, we know from the U.S. Supreme Court and other cases in the precedence of this court that the term trustee carries particular significance when it comes to the pursuit of avoidance claims and use of those powers in particular. Congress vested that role exclusively to the trustee in certain circumstances in Chapter 11 to a debtor in possession. But the cases where those unique powers are transferred to a private party, and that private party is either going to pursue those claims against others or extinguish those claims against itself, this Court has been very careful to carve out and rather than carve out, to establish requirements on the transfer of those claims. And Your Honors will recall that. If I understand, and I can understand what you're going to say here, but I understand it, I think the District Court full well understood these two different views and therefore undertook two different analyses, if you will. One, an analysis that had a settlement type of approach. That's my term for it. And another, a sales approach. Both of them trying to make sure that the Court had sufficiently analyzed those two different approaches and made the determination you're now talking about, didn't he? Well, the problem with that is that certainly the factors were identified on the record. And I assume by District Court you mean the trial level court, the bankruptcy court. That's what I meant. Sorry. I said District. And certainly that analysis was undertaken in terms of identifying the standards and then walking through those standards. So if they have the standards, now I'm sorry to interrupt you because I didn't want to. I want to hear the end result. But if they identify the standards to be applied, then at that point isn't it an abuse of discretion standard thereafter? It is an abuse of discretion, but it's an inherent abuse of discretion, even when you identify the correct standards and either misapply the facts or that... But just a minute. It's a matter of when we're talking about abuse of discretion standard or clear air standard, whichever you want to say, then I've got to find that what they did has no foundation. Nothing. Now, in this particular instance, there was no bid other than the bid that was put. No other bid whatsoever. Right. Therefore, how do you suggest that Lahajani... I don't know how to say that because I'm from Idaho. But you say Lahajani suggests that the trustee had to evaluate anything else. But if there's no other bid there, how has Lahajani got any precedent value whatsoever? Well, I would explain that two ways. One is technically there was no monetary bid present. If there's no monetary bid, there isn't a bid. Well, Lahajani in other cases suggest... No, Lahajani doesn't say what a bid is. Lahajani just says the trustee ought to evaluate that which is in front of him. And then in this particular case, there was no other bid in front of him. So how is Lahajani precedent for this case? Even if it's controlling on me, which I'm not sure it is. Right. Well, Lahajani says that the trustee has to evaluate bids. It also says that in situations where there is a limited number of bids, and especially in situations where the only bid is by the defendant on those causes of action, bidding is constrained and is therefore subject to scrutiny. Well, I understand that. And so... And in this bid, in this bid, everyone is paid off. Not exactly, Your Honor. Well, but just a minute. The other creditor, they made their claim absolutely over the bidder's claim. They were going to get paid. All the administrative expenses get paid. Everything's been paid. That's true without regard to this particular bid, meaning the clawback claim bid and the bankruptcy court found as much. I understand. So this bid was either going to go back to the defendant that was settling this claim as assuming that its claim were allowed, which we don't think was a safe assumption, or any excess was going to pour over to us. And under those circumstances, Lahajani said it doesn't require you to make a cash bid as a belt and suspender on top of a competing proposal under 503. It requires the bankruptcy court and the trustee to evaluate those two proposals. And there's nothing at all in the record that indicates the trustee analyzed the 503 proposal at all. In fact, the record indicates they had no idea of what the upside would be, that they had... Well, you're the one who made the 503 proposal. They had the 503 proposal that you made in front of them. If, in fact, you're suggesting they didn't evaluate it, didn't you put enough evidence forward to let them look at it? I mean, if I looked at that 503 proposal, I said it wasn't worth a dime. And is all he got to say is it's not worth a dime, and then it's okay? That's not sufficient. That's not sufficient because... What is sufficient? Sufficient is an objective evaluation of the claim. Well, an objective evaluation, as far as I'm concerned, about what you've proposed is zero. And we obviously, Judge, don't... Well, I know you don't think... And I'm being a devil's it seems to me if you thought that proposal was very valuable, you ought to have said what it was worth. But what it was worth was what was in the motion. That's why I tried to take up what the motion was in the first place. And perhaps, and I'm running out of time, but I'll answer this question, and then hopefully reserve some more time on rebuttal. But, Your Honor, what we said in the motion, and maybe this did not come through, but certainly we said it at the hearing as well, the value of the claims is $1.6 million. And when we tried to provide that evidence, when we tried to say, we have documents with us, Your Honor, if you want to see this, we can show you, we can go through the evidence. The bankruptcy court said, I think I have some idea about what the arguments are going to be, so no. And so it's not enough to say, hey, you didn't present something in the motion. And when you tried to put the record in front of the bankruptcy court, the bankruptcy court refused. Therefore, the trustee is off the hook in evaluating a viable claim. So I would, unless you have other questions right now, I would reserve my time for rebuttal. Good morning, Your Honors. May it please the Court, I'm Theodore Whithoff. I understand you're dividing your time. We are. I'm here on behalf of the Chapter 7 trustee, and we've agreed to share our time equally with the other appley in this case. I wanted to address the 503 proposal or the motion. I think that it's incorrect for the Omaha Seldins to point to Lahajani and say that their proposal is on par with what's being described in Lahajani. In Lahajani, the BAP describes a situation where a creditor is going to bear the risk and expense of an estate and pursuing litigation is not going to harm the estate. That's not the situation that the trustee was presented with in the proposal made by the Omaha Seldins. Instead, what was being offered was something along the lines of, more or less, trust us. We believe that these claims have more value than you think that they have, trustee. Oh, but by the way, we can walk away any time that we want and doesn't consider the added expense and risk that's going to be borne by the estate if we were to go down the road that the Omaha Seldins wanted the trustee to go. For example, at that very sale hearing, we had just completed the bidding on the largest asset in the Sky Financial estate, which was the clawback claims. After competitive bidding between the KCI on the one side and the Omaha Seldins on the other, the successful bid was $260,000. There was an earnest money deposit that was made of $11,750. Upon learning that the court may consider not going forward with the sale of the claims that are issued before this court today, KCI made very clear that they were considering pulling their previous bids in not only the Sky Financial estate, but the SVP estate. And although Judge Barton wasn't impressed with that idea, she stated that they would be subject to losing their earnest money deposits. You're not talking about a situation where near a quarter million dollars is not coming into the Sky Financial bankruptcy case if we're going down the road that the Omaha Seldins are talking about. And their proposal in no way seeks to indemnify the estate. It doesn't cover that expense. Indeed, not being the successful bidder of those clawback claims and asked whether they wanted to be the backup bidder at their $255,000 bid, they declined. So those are the real risks that the trustee needs to look at, aside from the other obvious expenses and keeping an estate open. The fact that the trustee is going to be a lightning rod for depositions and discovery that's propounded upon him. He's going to have to continue to retain general counsel to deal with all of those things. There's a whole assortment of risk that is not addressed at all in that 503 proposal. However, it seems to me that what petitioner or what Seldins is really arguing is that the trustee, even giving them discretion, and even given that one considers the general law relating to this particular motion, that they didn't do enough to evaluate the 503 motion in relation to the bid, and therefore we ought to send it back. Well, the evaluation that the trustee did was to identify what was going to be the key issue in the litigation that was being sold. There are either fraudulent conveyance claims that are being sold or there are preference claims that are being sold. And the key determination that needs to be made to figure out what that value is going to have for the estate is to make a KCI had a valid debt owed to it at the time that it received the transfers, the $1.6 billion. Did the trustee have a duty under Laijani to value the 503 motion and compare it to the bid under Laijani? I think that Laijani requires that the trustee and the court consider that motion, which, of course, the trustee did. And as far as evaluate, he did, in fact, evaluate that motion. And as far as value the motion, the thing that might be different than a typical case where valuation, you know, maybe you can present an appraisal or something like that, the key situation here is that the value is wholly dependent upon whether this is going to be a based upon an antecedent debt and therefore their potentially preferences or they receive the money for no consideration, in which case they're fraudulent conveyances. So the trustee, as set forth in his declaration, had been evaluating that discovery. That's not exactly what's at issue in the claim litigation, because what's being determined there is whether or not KCI had a valid claim on the petition date, not one year prior when they received the monies. But it's helpful in that there's all of this discovery that's going back and forth. The key witnesses have been deposed. Trustee's counsel is attending those depositions, combing through all the documents that are being produced. The trustee filed his own motions for Rule 2004 exams to get these documents. They're supposed to be coming to us, and we've been told that they are being produced to us as discoveries going forward in that claim litigation. And based upon all of that information that Trustee's counsel had, based on the analysis of what is your sense of this, is it a better or not probability that this is going to be based upon an antecedent debt or no claim whatsoever, the trustee, based upon that information as stated in his declaration, believed that the evidence tended to be that this was based upon an antecedent debt. Therefore, if you've got preferences, the unique situation in this case, if you have preferences out there and we litigate those preferences, which we believe to be valid preferences, but we bring all of the money back in, the mathematics based upon the creditor pool is such that if the trustee successfully recovered those monies, there's only something like, or the KCI dominated the general unsecureds to like 97% of the creditor pool. So the only people that are benefiting from that would be the administrative claimants. And that just didn't seem like a very satisfactory way to go for the trustee. Now, that's how it stood ex ante, but your opposing counsel said that that number has not now gone down in terms of the claims of KCIR. And does, I mean, does that suggest at least in hindsight that this was misjudged? I don't think that it does, Your Honors. And with respect, I haven't been paying super close attention to the claim dispute, but I do know that this is not resolved. I know that there are still final briefs to be submitted. And I guess until I see that outcome, I don't know that I necessarily take what Omaha-Seldon's counsel's appraisal of the matter is. Certainly, Mr. Bruno, who has been involved in that, could probably speak to that more. Because certainly, you know, the court could take into account not just what is the value of this as a settlement, but also that even if it did have a lot of value, it's all just going to flush through to KCIR because the claim is so big. Correct. But if the claim actually goes down where now it's well below what they're claiming the value, you know, of the claims, of these claims, of the sold claims were, then that at least, again, this is 20-20 hindsight and not in the ex ante determination the court had to make. But does that raise an issue that at least from the perspective of hindsight that that risk was misjudged? Well, it would be certainly interesting to see what the outcome of that is. But even at that, again, as I had stated earlier, and I really am taking up some of Mr. Bruno's time, but I just want to state this last thing, even if that's determinative that it was $800,000 on the date of the petition, as I stated before, that's not determinative about what KCI's claim was approximately one year prior to that, and that's truly what would have to be litigated in the subsequent preference or fraudulent conveyance action. Thank you. Thank you. Thank you. May it please the Court, my name is Jason Bruno here on behalf of Apelli's KCI Restaurant Management LLC and KCI Acquisitions II LLC, which was the actual purchaser. I think Judge Smith hit the issue right on the head. The Omaha Seldins had an opportunity to bid on the avoidance claims and do whatever they wanted to. They didn't bid because the reality is they didn't They explained that the reason why they didn't bid is that they didn't think the sale was appropriate and it would be inconsistent with their position to do that. The Court seemed to recognize that as well. We disagree with that. I mean, if they're sitting there coming saying this claim has so much value and we could have acquired it for $65,000.01 and made $1.5 million, any reasonable business people, which they certainly are represented by capable counsel, would have bid. They didn't do that and Judge Smith touched on the issue. One of the reasons we believe and the trustee considered and the bankruptcy court considered is they wanted to acquire and abuse the powers of the bankruptcy trustee and the powers of the bankruptcy court to go after my clients in a long-running, bitter family feud. Did the bankruptcy court or the district court in reviewing the bankruptcy court decision make any findings to support what you just asserted? I think so. I think the trustee had pointed that out to the court and I think the court No, but in the court's findings? I think so, certainly, because they consider the animosity amongst the parties. I think the district court expressly referenced the litigation that was ongoing involved the parties and the bankruptcy court certainly factored in and weighed the potential cost and the expansion of the bankruptcy court proceedings in doing so. This was a fair bidding process. The Omaha Seldons had notice of this claim and they came in now after the fact saying, well, it's worth $1.6 million. We don't think that's fair or we don't think it's appropriate. One of the reasons is because as the trustee and the bankruptcy court considered, the value of the underlying avoidance claims was weak. These claims were facing a motion for summary judgment because the crux of them was that it was somehow improper or fraudulent for the manager of the debtor to receive a fraction of its management fees and expense reimbursements for managing the debtor for more than a 10-year period. This manager came in, saved the investments, managed for about 10 years, returned about $28 million to the investors that otherwise would have been lost, and at the end of the day waited until all other creditors were satisfied and then received a fraction of its money, and then it was sued saying that was somehow wrong or improper. At the time these sales were impending, there was a motion for summary judgment based on vigorous and various defenses. There was a motion for Rule 5 file because we didn't believe there was a factual or legal basis for the claims in the first place, so the trustee factored all these considerations, factored the voluminous material and discovery that was presented, made the decision to sell these claims at public auction. What happened at the public auction? The market spoke. They came in and said these claims are worth $62,500, which with the case cited by the Omaha Seldons in their brief is basically presumptive evidence of the fair market value. We actually think the KCI acquisitions overpaid in this case, but they did so on purpose because they had an incentive. They were trying to avoid vexatious litigation from the Omaha Seldons that had been going on in other courts at various times since 2009 and that is still going on today and will still be going on probably for a couple of years down the road. However, I think the biggest question we have here, first of all, are you suggesting that we ought to adopt the rationale of the Lahajani opinion? Portions of it, like the parts where they say that the trustee should be given deference, but we kind of agree with the court. We don't think Lahajani really has that much bearing on this case. There really wasn't a bid made in this case, and even if the trustee was required to compare the motion made by the Omaha Seldons. Do you think Lahajani suggests that they are to compare the motion to the bid? If there was a bid, maybe, but I think whatever Lahajani suggests was done in this case by both the trustee and the bankruptcy court. I mean, the bankruptcy court took a belt and suspenders approach, Judge Collins, to steal your term and considered both of the factors, considered every factor under both the rule and the case law at issue, expressly set them forth in her written findings, weighed them both. The judge engaged in an extensive and detailed analysis, and I think whatever requirements were set forth by Lahajani or anything else was clearly satisfied by the bankruptcy court, as determined by the district court as well. Do you have anything you wanted to add to counsel's idea that your claim is a lot worse than it was when we started here? It's certainly lower. I wouldn't say it's worse. The bankruptcy court made a finding that some of our claims were barred by the statute of limitations. We don't necessarily agree with that finding, but it doesn't really matter to this case because the avoidance claims were seeking monies we had already received. The claims that are at issue now in the bankruptcy case are for future claims, so we don't think one has anything to do with the other, and we think based on the merits of this case, even if our claim is whittled down to the $800,000, $900,000 that it is now, we think we're going to prevail on that, so it's really a distinction without much of a difference, but you can't go back in hindsight and determine whether or not the trustee or the bankruptcy court abused their discretion. Based on the record before them and the motion that was submitted by the Omaha Seldins, there's no abuse of discretion or anything that was illogical or unreasonable. Thank you. Counsel, I'll give you an extra minute as well. Thank you, Governor. I'll be brief in rebuttal. In terms of just clarifying a few things, there is nothing in the record, and the court made no findings, didn't even make any suggestion that it was agreeing with this bald assertion that somehow the abuse of the powers of the trustee were what we were after. There is nothing in the record to support that, and frankly, that is a fallacious argument. In terms of the status of the claim as it exists today, we do think it's important to now look at what we tried to present to the trustee at the time, and the record is very clear. Starting in 2015, we tried to meet with the trustee. We tried to give the trustee the evidence that showed the strength of the avoidance claims. We tried to talk about how the claims were time-barred. The court granted partial summary judgment on that basis. The monies that were taken before presumably were applied to management fees that even predated the 2008 time frame, and we think that there was no basis for those fees to be paid, which would give rise to a fraudulent transaction. The trustee wouldn't talk to us. The trustee filed a motion and said, well, what does the record, and the trustee said, well, we've already cut our deal. If you don't like it, object to it. That is not consistent with the fiduciary obligations of a trustee, and the same rationale happened when we filed the 503B motion. It's important to remember, Your Honors, that the declaration that they purport to rely on of the trustee predates the filing of our 503B motion. They didn't even file an objection to our 503B motion. They filed a late joinder to KCI's objection to our 503B motion, and if you read the record very carefully at the hearing, they didn't do anything to evaluate the 503B motion. What I heard up here is that Lahijani requires them to, quote, consider the motion, and all that would mean here is that they acknowledged that one was filed because there was no analysis done. So unless Your Honors have other questions, that is our argument. We'd ask that the judgment be reversed. All right. The case just argued will be submitted. That completes our calendar for today, and this session of the court is adjourned. All rise. This court's session is adjourned.
judges: Bybee, N.R. Smith, Collins